UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

James Keenan, Manuel Vega,  File No. 19-cv-1272 (ECT/ECW)
Luke Hoffman, Stephen Hoffman,
and Benedict Hoffman,

      Plaintiffs,

v.  **OPINION AND ORDER**

Holy See (State of Vatican City; The
Vatican),

      Defendant.

---

Michael G. Finnegan, Jeffrey R. Anderson, and Elin Lindstrom, Jeff Anderson & Associates, P.A., St. Paul, MN, for Plaintiffs James Keenan, Manuel Vega, Luke Hoffman, Stephen Hoffman, and Benedict Hoffman.

Alexis I. Haller, Law Office of Alexis Haller, Aptos, CA; Jeffrey S. Lena, Law Office of Jeffrey S. Lena, Berkeley, CA; Jennifer Bruno, Law Office of Jennifer Bruno, Soquel, CA; and Charles B. Rogers, Taft, Stettinius & Hollister LLP, Minneapolis, MN, for Defendant Holy See.

---

The five Plaintiffs in this case suffered sexual abuse committed against them in the United States by Roman Catholic priests, and they seek to recover damages from the Holy See, a sovereign nation located in the Vatican City State, Italy, and the supreme body of government of the Roman Catholic Church. "The Foreign Sovereign Immunities Act provides that foreign nations are presumptively immune from the jurisdiction of United States courts. The statute, however, sets forth several specific exceptions." *Fed. Republic of Ger. v. Philipp*, 141 S. Ct. 703, 707 (2021). Plaintiffs here contend that two of these

exceptions—one covering commercial activities and the other covering tortious acts—apply to authorize federal jurisdiction over the case, and they assert numerous claims under Minnesota law and one claim under international law.

The Holy See has moved to dismiss the case on several grounds under Federal Rule of Civil Procedure 12(b). These include insufficient service of process, lack of personal jurisdiction, improper venue, lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act, lack of subject-matter jurisdiction under Article III of the United States Constitution, and failure to state a claim upon which relief may be granted.

The Holy See's motion will be granted insofar as it challenges service because Plaintiffs failed to strictly comply with federal law governing service of process on a foreign state. Under the circumstances, the granting of this aspect of the Holy See's motion means there is not personal jurisdiction over the Holy See and precludes consideration of other grounds advanced in support of dismissal at this time. This result fairly may be criticized as impractical and inefficient, but the law requires it. To enable the case to proceed as efficiently as possible from this point forward, the Complaint will not be dismissed. Instead, Plaintiffs' insufficient service will be quashed, and Plaintiffs will be given a reasonable time to serve process in compliance with federal law. The Holy See's motion will be denied in all other respects without prejudice to the Holy See refiling its motion and seeking dismissal on the unadjudicated grounds after service.

I

Plaintiffs, who are now adults, each suffered sexual abuse as children committed by Roman Catholic priests assigned to parishes in archdioceses in the United States. Father Curtis Wehmeyer sexually abused Plaintiffs and brothers Luke Hoffman, Stephen Hoffman, and Benedict Hoffman. The Hoffmans were parishioners at the Church of the Blessed Sacrament in the Archdiocese of St. Paul and Minneapolis. Compl. ¶¶ 167, 213 [ECF No. 1]. Father Wehmeyer was ordained as a priest in the St. Paul and Minneapolis Archdiocese in 2001 and worked at the Church of the Blessed Sacrament from 2006 to 2012. *Id.* ¶¶ 158, 167–68. Father Wehmeyer groomed and sexually abused the Hoffmans during that period. *Id.* ¶¶ 167–68, 178–80. Father Thomas Adamson sexually abused Plaintiff James Keenan. Keenan was a parishioner at Risen Savior Catholic Church, also located in the Archdiocese of St. Paul and Minneapolis. *Id.* ¶¶ 238, 252. Father Adamson was ordained as a priest in the Diocese of Winona, Minnesota, in 1958 and worked at Risen Savior Catholic Church from about 1981 to 1985. *Id.* ¶¶ 235, 238. Father Adamson sexually abused Keenan in 1981. *Id.* ¶ 239. Father Fidencio Silva-Flores sexually abused Plaintiff Manuel Vega. Vega was a parishioner at Our Lady of Guadalupe Catholic Church in the Archdiocese of Los Angeles. *See id.* ¶¶ 218–19, 233. Father Silva-Flores was ordained as a priest in the Missionaries of the Holy Spirit order in 1978 and worked at Our Lady of Guadalupe from about 1978 to 1984. *Id.* ¶¶ 215, 218, 233. Father Silva-Flores sexually abused Vega between 1979 and 1984. *Id.* ¶ 219.

Plaintiffs filed their Complaint in this case in May 2019. Plaintiffs allege that the Holy See "has known about the widespread problem of child sexual abuse committed by

3

its clergy for centuries, but has covered up that abuse and thereby perpetuated the abuse" and that the Holy See's conduct was "a substantial factor in bringing about [their] abuse." *Id.* ¶¶ 57–61; *see id.* ¶¶ 82–145. Plaintiffs assert the following causes of action: nuisance in violation of common law and Minn. Stat. §§ 561.01 and 609.74 (Counts 1 and 2), *id.* ¶¶ 265–85; breach of contract (Count 3), *id.* ¶¶ 286–98; breach of the implied covenant of good faith and fair dealing (Count 4), *id.* ¶¶ 299–302; violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.* (Count 5), *id.* ¶¶ 303–16; violation of the Minnesota False Statement in Advertisement Act, Minn. Stat. § 325F.67 (Count 6), *id.* ¶¶ 317–19; intentional infliction of emotional distress (Count 7), *id.* ¶¶ 320–22; violation of customary international law of human rights (Count 8), *id.* ¶¶ 323–26; and negligence, negligent supervision, and negligent retention as to the Hoffman Plaintiffs (Counts 12–14), *id.* ¶¶ 338–44. Plaintiffs seek injunctive relief, *see id.* ¶¶ 327–37 (Counts 9–11), as well as damages, costs, attorneys' fees, and interest, *id.* at p. 76.

II

The Holy See's motion to dismiss for insufficient service of process—and, derivatively, for lack of personal jurisdiction—implicates several federal statutes and administrative regulations. "A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j)(1). Proper service under § 1608 is a prerequisite to a federal district court's personal jurisdiction over a foreign state. 28 U.S.C. § 1330(b). When a defendant contests the adequacy of service, the burden is on the plaintiff to establish proper service. *See Hawkeye*

*Gold, LLC v. China Nat'l Materials Indus. Import & Export Corp.*, No. 4:16-cv-00355-JAJ, 2017 WL 10153534, at *3 (S.D. Iowa Sept. 6, 2017).

Plaintiffs acknowledge that the Holy See is a "foreign state" (as distinct from "its political subdivision, agency, or instrumentality"), *see* Compl. ¶¶ 6, 15; Pls.' Mem. in Opp'n at 72–73 [ECF No. 31], and the rules governing service on a "foreign state" appear specifically in 28 U.S.C. § 1608(a). It provides:

> **(a)** Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:
>
> **(1)** by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> **(2)** if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> **(3)** if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> **(4)** if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

> As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

28 U.S.C. § 1608(a).

In accordance with this statute's final paragraph, the Secretary of State has promulgated a regulation prescribing the form a "notice of suit" must follow. The regulation appears at 22 C.F.R. § 93.2. It says that the notice of suit "shall be prepared in the form that appears in the Annex to this section." 22 C.F.R. § 93.2(a). The Annex, in turn, identifies nine items to be included on the notice:

### NOTICE OF SUIT (OR OF DEFAULT JUDGMENT)

1. Title of legal proceeding; full name of court; case or docket number.
2. Name of foreign state (or political subdivision) concerned:
3. Identity of the other Parties:

### JUDICIAL DOCUMENTS

4. Nature of documents served (e.g., Summons and Complaint; Default Judgment):
5. Nature and purpose of the proceedings; why the foreign state (or political subdivision) has been named; relief requested:
6. Date of default judgment (if any):
7. A response to a "Summons" and "Complaint" is required to be submitted to the court, not later than 60 days after these documents are received. The response may present jurisdictional defenses (including defenses relating to state immunity).
8. The failure to submit a timely response with the court can result in a Default Judgment and a request for execution to satisfy the judgment. If a default judgment has been entered, a procedure may be available to vacate or open that judgment.

> 9. Questions relating to state immunities and to the jurisdiction of United States courts over foreign states are governed by the Foreign Sovereign Immunities Act of 1976, which appears in sections 1330, 1391(f), 1441(d), and 1602 through 1611, of Title 28, United States Code (Pub. L. 94-583; 90 Stat. 2891).

*Id.* § 93.2(a), Annex (footnote omitted). With respect to the fifth item—and of particular relevance here—the regulation provides:

> In supplying the information specified in item 5, a party shall in simplified language summarize the nature and purpose of the proceeding (including principal allegations and claimed bases of liability), the reasons why the foreign state or political subdivision has been named as a party in the proceeding, and the nature and amount of relief sought. The purpose of item 5 is to enable foreign officials unfamiliar with American legal documents to ascertain the above information.

*Id.* § 93.2(c).

The circuit courts of appeals to have addressed the issue say that § 1608(a)'s service provisions "can only be satisfied by strict compliance." *Magness v. Russian Fed'n*, 247 F.3d 609, 615 (5th Cir. 2001) (collecting cases); *see also Kumar v. Republic of Sudan*, 880 F.3d 144, 154 (4th Cir. 2018). Though our Eighth Circuit Court of Appeals has not weighed in on this issue directly, it makes better sense to think it would reach the same conclusion. *See Smith v. Ghana Com. Bank, Ltd.*, No. 08-cv-5324 (ADM/JJK), 2009 WL 3327206, at *2–4 (D. Minn. Oct. 13, 2009) (dismissing complaint for, among other reasons, plaintiff's failure to strictly comply with § 1608(a)), *aff'd in relevant part*, 379 F. App'x 542 (8th Cir. 2010).

III

Plaintiffs' efforts to serve the Holy See took just over a year from the date they filed their Complaint. Plaintiffs filed their Complaint on May 14, 2019. ECF No. 1. Plaintiffs first attempted service of process by mail under 28 U.S.C. § 1608(a)(3) in October 2019. ECF Nos. 6, 7. The roughly five-month delay between filing and Plaintiffs' first service attempt was understandable owing to the time required to translate documents from English into the Holy See's official language of Latin. *See* Letter from Pls.' Counsel at 2–3 [ECF No. 5]. Plaintiffs then attempted service via diplomatic channels under 28 U.S.C. § 1608(a)(4) in January 2020. ECF No. 8. Plaintiffs represented that it was necessary for them to attempt these methods (under § 1608(a)(3) and (4)) because "Plaintiffs and Defendant have not entered into any special agreement for service of the Summons and Complaint [necessary to attempt service under § 1608(a)(1)], nor is Defendant Holy See a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters [necessary to attempt service under § 1608(a)(2)]." Letter from Pls.' Counsel at 2.

On June 16, 2020, the Parties filed a stipulation establishing July 20, 2020, as the deadline by which the Holy See was required to "answer, move or otherwise respond to the Complaint." Stipulation at 3 [ECF No. 13]. In that same stipulation, the Parties also agreed that, "[a]lthough no certified copy of a diplomatic note that would be consistent with section 1608(a)(4) service has been filed with the Court (*cf.* 28 U.S.C. § 1608(c)(1)), the Holy See received the service documents prepared by Plaintiffs via diplomatic channels on April 20, 2020." *Id.* ¶ 3. However, a letter from a representative of the United States

8

Secretary of State enclosing "[a] certified copy of the diplomatic note" was received and filed with the Court on June 15, 2020, the day before the Parties filed their stipulation. Letter from J. Hess [ECF No. 9] and Diplomatic Note [ECF No. 9-1].[1]

IV

In its motion, the Holy See argues specifically that Plaintiffs' "notice of suit" did not strictly comply with the regulation promulgated by the Secretary of State, specifically the requirements for item 5 of the notice described in 22 C.F.R. § 93.2(c); *see also* 28 U.S.C. § 1608(a). Def.'s Mem. in Supp. at 30–33 [ECF No. 23]. With respect to this item, Plaintiffs' notice of suit reads as follows:

> 5. NATURE AND PURPOSE OF PROCEEDINGS:
> The Plaintiffs' claims against the Holy See (State of the Vatican City; The Vatican) is for damages, injunctive relief, and other relief in an amount to be determined as a result of the Holy See's (State of the Vatican City; The Vatican) nuisance (Common Law and Minn. Stat. §609.74), nuisance (Minn. Stat. §561.01), breach of contract, breach of implied covenant of good faith and fair dealing, deceptive trade practices (M.S.A §325D.44), false statement in advertisement (M.S.A. §325F.67 & M.S.A. §8.31), intentional infliction of emotional distress, violation of customary international law of human rights, negligence, negligent supervision and negligent retention.

Diplomatic Note at 125.

This item of Plaintiffs' notice of suit does not comply strictly with the governing regulation, 22 C.F.R. § 93.2(c), or, therefore, the controlling statute, 28 U.S.C. § 1608(a).

---

[1] It is not clear whether the Parties were unaware of the June 15, 2020 filing of the letter and diplomatic note when they filed their stipulation on June 16, or whether there remains some question concerning the sufficiency of the letter and diplomatic note. Regardless, this issue does not bear on the Holy See's motion to dismiss for insufficient service of process.

9

Plaintiffs' notice describes the relief Plaintiffs seek in the broadest possible terms ("damages, injunctive relief, and other relief in an amount to be determined") and lists Plaintiffs' legal claims by name and, for some, provides a source or sources of law. Though § 93.2(c) requires the notice to summarize the "amount of relief sought," Plaintiffs' notice identifies no amount. It is (obviously) true that Plaintiffs cannot be expected to identify their damages precisely at this early stage, but it seems reasonable to expect a plaintiff suing a foreign state to identify at least a floor. Plaintiffs did that in their Complaint, demanding a judgment "in excess of $75,000.00, plus costs, disbursements, reasonable attorneys' fees, [and] interest[.]" Compl. at 76.[2] The notice also is deficient because it includes no summary of Plaintiffs' "principal allegations," something the regulation explicitly requires separately from identifying the "claimed bases of liability[.]" 22 C.F.R. § 93.2(c). This deficiency seems especially problematic. Though merely identifying a cause of action might in some cases signal a suit's probable factual basis, there is no such obvious connection here between at least some of Plaintiffs' claims and principal allegations. For example, it is not intuitive to conclude that claims for breach of contract, breach of an implied covenant of good faith and fair dealing, deceptive trade practices, and false advertising signal allegations of childhood sexual abuse.[3] The notice's listing of

---

[2]   It would be irrational to understand 22 C.F.R. § 93.2 to allow information missing from a notice of suit to be filled in by reference to the relevant complaint. Taken to its logical conclusion, that understanding would appear to render the notice of suit, or at least most of it, pointless.

[3]   In a separate section identifying the Parties, the notice describes each Plaintiff as "a minor . . . at the time of the sexual abuse alleged in this matter." Diplomatic Note at 124–125, Item 3. Plaintiffs do not rely on these or other allegations in their Notice to show

10

claims risks confusing a foreign official unfamiliar with American legal documents or the American legal system. The "nuisance" claim appears twice for no apparent reason. The common law is identified as the source of one claim (nuisance) but not others for which it would seem to be the source (breach of contract, breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress, negligence, negligent supervision, and negligent retention). And citations to statutes follow different forms. The notice uses "Minn. Stat." for two claims and "M.S.A." for two others. It's easy to hypothesize that these different citation forms would prompt a foreign official, even one with legal training, to think that "Minn. Stat." and "M.S.A." refer to different bodies of law. Finally, the notice does not include "the reasons why the [Holy See] has been named as a party in the proceeding[.]" *Id.*

Plaintiffs' arguments defending the sufficiency of the notice of suit are not persuasive. Plaintiffs argue that their notice complies with 22 C.F.R. § 93.2(c) as the regulation was construed and applied in *O'Bryan v. Holy See*, 490 F. Supp. 2d 826 (W.D. Ky. 2005), Pls.' Mem. in Opp'n at 72–73, but *O'Bryan* is distinguishable. In *O'Bryan*, the court determined that the plaintiffs' attempted service on the Holy See was insufficient because it was "not obvious that the package [containing process] was properly addressed to reach" the Holy See's equivalent of a foreign minister. *Id.* at 832. "Improperly addressed documents do not strictly comply with the FSIA[,]" the court noted. *Id.* On this

---

compliance with 22 C.F.R. § 93.2(c). *See* Pls.' Mem. in Opp'n at 72–73. If it were appropriate to rely on information provided in another item to show compliance with 22 C.F.R. § 93.2(c), the mention of "sexual abuse" is quite broad and, in any event, does not address the other deficiencies identified in Plaintiffs' notice of suit.

11

basis, the court allowed the plaintiffs "an additional 60 days within which to perfect service." *Id.* In rejecting the Holy See's separate challenge to the adequacy of the plaintiffs' notice of suit, the court identified "no significant problem with the content of the notice of suit, as it provides the basic information required by the letter of section 1608(a) and 22 C.F.R. § 93.2." *Id.* at 833. The court rejected the Holy See's challenge to the notice as an unreasonable "demand for detailed, treatise-like explanations of various court documents and legal terms[.]" *Id.* Here, by contrast, basic information required by 22 C.F.R. § 93.2(c) is missing, and the Holy See's identification of these gaps cannot fairly be described as a demand for needless details or "treatise-like explanations." Plaintiffs imply that the Holy's See's insufficiency-of-service challenge should be rejected because "the Holy See has responded to Plaintiffs' allegations, and the parties are actively engaged in the lawsuit." Pls.' Mem. in Opp'n at 73. There are two problems with this suggestion. First, "actual notice to a foreign state of the pendency of a lawsuit is 'irrelevant[]'" to establishing strict compliance with 28 U.S.C. § 1608(a) and 22 C.F.R. § 93.2. *Doe v. Holy See*, No. 13-cv-128, 2014 WL 1329985, at *4 (E.D. La. Apr. 2, 2014); *see Lovati v. Bolivarian Republic of Venez.*, Nos. 19-CV-4793, -4796 (ALC), 2020 WL 6647423, at *2–3 (S.D.N.Y. Nov. 11, 2020). Second, the Holy See has properly challenged the sufficiency of service, and the Holy See's presentation of alternative arguments in support of its motions to dismiss on other grounds do not waive its insufficient-service defense. Fed. R. Civ. P. 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."). Finally, at the hearing on the Holy See's motions, Plaintiffs argued that they satisfied 22 C.F.R. § 93.2(c)'s

12

summary-of-principal-allegations requirement by listing each of their causes of action. The better interpretation of the regulation is that it requires item 5 of a notice of suit to summarize both a suit's principal factual allegations and claimed bases of liability.

V

Determining the Holy See has not been properly served means there is not jurisdiction to address the merits of other grounds raised in the motion. *See* 28 U.S.C. § 1330(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). But it would seem inefficient (wasteful, really) to dismiss the case on this basis.[4] Instead, an order will be entered quashing Plaintiffs' service of process and allowing Plaintiffs an additional 60 days within which to perfect service. 5B Arthur R. Miller, Mary Kay Kane and A. Benjamin Spencer, *Federal Practice and Procedure* § 1354 (3d ed. Oct. 2020 Update). This makes sense in view of the earnestness with which Plaintiffs have pursued their claims and the relative ease of curing the defects in process identified here. *Id.*

---

[4] The Parties spent several months briefing many difficult legal questions. The Holy See filed its motion, opening brief, and supporting papers on July 20, 2020. ECF Nos. 21–27. After stipulating to and receiving an extension of their response deadline, ECF Nos. 28–30, Plaintiffs filed their opposition brief and supporting papers on October 9, 2020, ECF Nos. 31–32. After stipulating to and receiving an extension of its reply deadline, ECF Nos. 33–35, the Holy See filed its reply brief on December 7, 2020, ECF No. 36. The motions were thoroughly argued during a hearing on December 14, 2020. ECF No. 38. And the Court has spent considerable time reviewing and analyzing all questions raised by the Holy See's motion. An outright dismissal would require Plaintiffs to refile the case and perhaps involve assignment to another judge. There's no need for that.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant Holy See's Motion to Dismiss [ECF No. 21] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Plaintiffs' service of process is **QUASHED**.

2. Plaintiffs may attempt to serve Defendant in compliance with applicable law within 60 days from the filing of this order.[5]

3. Defendant's motion is **DENIED** in all other respects without prejudice to Defendant's right to refile the motion following any service Plaintiffs may attempt under paragraph 2 of this order.

4. Following any service Plaintiffs may attempt under paragraph 2 of this order, the Parties shall contact the Court to schedule a status conference to discuss and determine how best to present and adjudicate any motion Defendant may refile.

Dated: February 22, 2021            s/ Eric C. Tostrud
                                    Eric C. Tostrud
                                    United States District Court

---

[5] If more than 60 days is required to attempt service, then Plaintiffs are invited to file a motion seeking additional time.